# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4713 | **DATE** | 8/3/2001 |
| **CASE TITLE** | Ferguson vs. CHA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing held.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment (43-1) is denied. Enter Memorandum Opinion and Order. Pretrial order to be filed by 9/28/01; and response to any motions in limine by 10/12/01. Pretrial conference set for 11/19/01 at 4:00 p.m. Trial set for 1/7/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | 8/6/01 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | EB docketing deputy initials | 57 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 AUG -3 PM 5:56 | 8/3/2001 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |


DOCKETED
AUG 0 6 2001

| | |
|---|---|
| YOLANDA FERGUSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 99 C 4713 |
| ) | |
| CHICAGO HOUSING AUTHORITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Yolanda Ferguson was a project manager in the Finance Administration section of the Chicago Housing Authority (the "CHA") in Chicago, Illinois, from 1988 to 1995, when she was fired--she says, because she complained about sexual harassment at work. In particular, Ferguson claims that her supervisor, Rick Burback, made incessant sexual advances to her from October 1994 to October 1995, mostly in the "private" space of her cubicle, rubbing his body against hers, placing his hands on her body, and standing uncomfortably close to her. In June 1995, he asked to go out with her, and in August 1995, to "be nice" to him. She says that he also required her, and no one else, to obtain permission to leave her desk, to go to the washroom, and to have a written doctor's letter to get time off work. She filed a complaint with the Illinois Department of Human Rights in April 1995, and was fired in October 1995, ostensibly as part of a reorganization to deal with a deficit. She testifies that, in late August 1995, Burbank told her

that she would be fired in the reorganization unless she dropped her complaint and acceded to his sexual demands. She sued under Title VII for sexual harassment and retaliation. The CHA moves for summary judgment. I deny the motion.

I.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Ms. Ferguson's sexual harassment claim is a hostile work environment claim. Title VII bans "conduct that unreasonably interfer[es] with an individual's work performance or creat[es] an intimidating, hostile, or offensive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). The plaintiff must prove that the conduct complained of made her working environment both objectively and subjectively hostile. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). Not every unpleasant workplace is a hostile environment. "The occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers" would be neither pervasive nor offensive enough to be

actionable. *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995). However, misconduct need not fall to the level of sexual assault to be unlawful harassment: "other physical conduct, whether amorous or hostile, for which there is no consent expressed or implied; uninvited sexual solicitations; [or] intimidating words or acts" may violate the law. *Id*. To determine whether challenged conduct would be unlawful, I should examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

The CHA argues that Ms. Ferguson has failed to meet this standard because, it says, she has alleged "only" four incidents of harassment, two that it identifies with precision: one on October 5, 1995 at 4:45 p.m., and October 13, 1994, at 10:15, a.m., where Ms. Ferguson alleged that Burbank rubbed his body against hers, and, less exactly, the incidents in June and the end of August, in which Burbank asked her to "go out" and "be nice." On this characterization of the facts, the CHA invokes, among other cases, *Adusumilli v. City of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998) (affirming summary judgment for employer, even where a supervisor made allegedly derogatory sexual comments to plaintiff and plaintiff's co-workers repeatedly stared at plaintiff's breasts and, on one occasion, touched plaintiff's buttocks).

However, Ms. Ferguson responds that this mischaracterizes her testimony, which is that the unwanted physical contact involved "ongoing actions," and so she "[could] not tell you exactly how many times" Burbank touched her, grabbed her, rubbed against her, or tried to feel her up. She testified that apart from a few occasions, she "[didn't] recall specific dates because Burbank [kept] coming back . . . . I [could] not keep him out because he [was] the supervisor . . . . The only thing [that I could do was] that I [tried] not to stay there late by myself." She referred to a number of concrete instances where she could not recall the precise date, but where she remembered what happened, for example, once in May 1995 when, she says, Burbank brought her a document to sign, and leaned on her. "I could feel his body on mine on that day." A plaintiff need not date stamp every incident. *See Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir. 1994) (allowing a sexual harassment claim to proceed despite the fact that many of the plaintiff's allegations were incomplete); *Schaffner v. Hispanic Housing Dev. Corp.*, 76 F. Supp. 2d 881, 883 (N.D. Ill. 1999) (Bucklo, J.). "Credibility determinations [and] the weighing of the evidence . . . are jury functions, not those of a judge . . . on a motion for summary judgment. *Anderson*, 477 U.S. at 255. The jury must decide whether to believe her.

Although the particular acts to which Ms. Ferguson testifies are less egregious than some, I may consider their cumulative

effect. "A hand on the shoulder, a brief hug, or a peck on the cheek, or even "more intimate or more crude physical acts--a hand on the thigh, a kiss on the lips, a pinch of the buttocks," although insufficient for sexual harassment in isolation, still "[c]umulatively or in conjunction with other harassment, might become sufficiently pervasive to support a hostile environment claim." *Hostetler v. Quality Dining,* 218 F.3d 798, 808 (7th Cir. 2000) Given its ongoing character, it is enough for "the kind of male attentions that can make the workplace hellish for women." *Baskerville,* 50 F.3d at 430. Constant unwelcome physical contact of a sexually suggestive character over a period of months, repeated unwanted propositioning, and having to be rationally concerned with being alone in one's own office for these reasons are facts that are legally sufficient for the sort of pervasive and severe misconduct that could, if proved, constitute sexual harassment.

The CHA argues, further, that Ms. Ferguson cannot prove that Burback's conduct was unwelcome because, it says, she offers no evidence of any written complaint that she made about it. However, a plaintiff need not complain about sexual harassment in writing for the conduct to be unwelcome. "The correct inquiry is whether [the victim] by her conduct indicated that the alleged sexual advances were unwelcome." *Meritor,* 477 U.S. at 68). No specific kind of conduct, such as a written complaint, is mandated. Ms. Ferguson testifies that she repeatedly told Burbank to keep his

-5-

hands and other body parts to himself, made clear that his attentions were not welcome, and complained about Burbank's behavior to his supervisor Hans Schuster and to Marilyn Jefferson, the director of human resources. Moreover, Ferguson need not even have done that. The Seventh Circuit has held that "'[w]elcome sexual harassment' is an oxymoron." *Carr v. Allison Gas Turbine Div., General Motors Corp.*, 32 F.3d 1007, 1008 (7th Cir. 1994). Because in that case, there was no evidence plaintiff manifested "enthusiastic receptiveness" to crude and suggestive conduct, the court said, "of course it was unwelcome." *Id.* at 1011. The CHA does not argue that Ferguson "enjoyed or appeared to enjoy the campaign of harassment against [her]," *id.*, nor need a woman normally introduce further evidence that she finds it unwelcome to be continually fondled, touched, caressed, and groped without her consent, propositioned, and subjected to other similar conduct of the sort testified to here.

The CHA invokes the affirmative defenses available under *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). When there has been no tangible employment action, an employer may avoid liability or damages by showing by a preponderance of the evidence that the employer (1) exercised reasonable care to prevent or promptly correct any sexual harassment, and (2) that the plaintiff unreasonably failed to take advantage of any preventative or

corrective opportunities the employer provided. *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

I first consider whether the threshold condition of "no adverse action" applies. The CHA claims that, although she was later fired, Ms. Ferguson did not suffer adverse action as a result of sexual harassment. However, "conditions of employment that are designed to harass and humiliate employees because of [sex] are actionable adverse employment actions." *Stockett v. Muncie Indiana Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000). Ms. Ferguson testifies that she and no other employee had to obtain permission to leave her desk, to go to the washroom, and to have a written doctor's letter to get time off work. That is humiliating enough for adverse action. Because lack of adverse action is a predicate of the availability of the *Ellerth-Faragher* affirmative defenses, the CHA may not use them here, at the summary judgment stage.

But even if the affirmative defenses were available, the CHA could not prevail under them at summary judgment. The CHA argues that that it has a policy against sexual harassment, and so exercised reasonable care to prevent or remedy harassment. However, the mere existence of a harassment policy does not automatically shield the employer from liability. *Faragher*, 524 U.S. at 791. The CHA also argues that Ms. Ferguson did not complain to the EEO counselor or to her own department head, and so unreasonably failed to take advantage of preventative or corrective opportunities

offered by the CHA. However, she says she did complain to the human resources director and to *Burbank's* supervisor, which should have been enough, but nothing happened, which if true rather undermines the claim that there were effective measures against harassment. Summary judgment is therefore denied.

II.

Ms. Ferguson also claims that she was fired in retaliation for filing a charge with the Illinois Department of Human Rights about the events that led to this lawsuit. To show retaliation, she must establish that (1) she participated in a protected activity under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998). After a prima facie case has been made, the employer must produce a non-retaliatory reason for the dismissal. *Sanchez v. Henderson*, 188 F.3d 740, 746 (7th Cir. 1999). The employee must then rebut the employer's proffered reason by demonstrating that it is a mere pretext for discrimination. *Id.*

The CHA challenges causation, arguing that a more-than six month (April to October 1995) delay is too long for me to infer that the charged conduct caused the termination. It also claims that Ms. Ferguson was terminated as part of a reorganization that had nothing to do with her human rights claim, but was a response to a budget deficit. However, Ms. Ferguson presented other evidence

than mere temporal proximity: in particular, that in August 1995 Burbank actually told her in so many words that if she did not agree to stop complaining to human resources, and to go out with him, she would be fired in the reorganization; and, she says, Hans Schuster (Burbank's boss) told her that Burbank had decisionmaking influence in the matter. A rational jury could find for Ms. Ferguson if it believed her on this point, which would also vitiate the claim that firing her as part of the reorganization was independent of her protected activity. Therefore, Ms. Ferguson's retaliation claim involves a disputed issue of material fact.

III.

The CHA's motion for summary judgment on Ms. Ferguson's sexual harassment and retaliation claims is DENIED.

**ENTER ORDER:**

_Elaine E. Bucklo_
**Elaine E. Bucklo**
United States District Judge

Dated: August 3, 2001